NEW-YORK,<br>Nov. 1810.<br><br>BEECKER<br>v.<br>BEECKER.

Judgment affirmed.(a)

———————

BEECKER <em>against</em> BEECKER.

THIS was an action of *assumpsit*. The declaration
stated, that *Peter Beecker*, on the 22d *June*, 1802,
made his will, and devised to his son, the defendant, all
*his real estate in Greenwich*, in *Washington* county, ex-
cept the ground on which the baptist meeting-house
stood, to hold the same in fee; subject, nevertheless, to
the charges, legacies and encumbrances, mentioned, &c.
That by the same will he bequeathed to his daughter,
the plaintiff, 90 dollars, to be paid to her in half-quar-
terly payments, by the defendant, during her life, upon
the order of his executors; and which annuity was by
the said will declared to be chargeable upon the real es-
tate devised to the defendant. And by his *codicil*, made
the 26th *February*, 1803, he bequeathed to the plaintiff
the additional sum of 10 dollars, to be paid in the same
manner by the defendant, as the said 90 dollars; that

*On a motion in arrest of judgment in an action of assumpsit, the promise laid in the declaration is presumed to be an express promise. An action at law may be sustained against a devisee upon his express promise to pay a specific sum bequeathed as a legacy, and charged on the land devised, made after the executors had assented to the legacy, and in consideration of the devisee's having become seised of the land under the devise.*

But whether an action at law will lie against a devisee or tertenant in possession of land
charged with the payment of a legacy, without such promise to pay the legacy, *Query.*

the testator died on the 19th *March*, 1803, seised of the lands devised to the defendant, and without altering or revoking his will or codicil. The plaintiff then averred, that the defendant, on the 19th *March*, 1803, entered into and upon the real estate so devised to him, and became seised of it, subject to the payment of the said annuity of 100 dollars. That the executors, on the 19th *May*, 1803, proved the will, and assented to the legacies. That on the 12th *September*, 1809, the executors, by order in writing, directed the defendant to pay the said annuity to the plaintiff. That the plaintiff presented the order to the defendant, and requested payment, and that he refused. That the annuity for 6 1-2 years is in arrear and due from the defendant, whereof he had notice. That the defendant hath occupied the real estate aforesaid, from the death of the testator, under the will. That by reason of the premises, the defendant became liable to pay, and being so liable, he, in consideration thereof, on the 19th *September*, 1809, promised to pay, &c. Yet, &c.

Plea, *non assumpsit.*

A verdict having been found for the plaintiff, the defendant moved in arrest of judgment;

1. Because, *indebitatus assumpsit* will not lie to compel the payment of a legacy bequeathed by will.

2. That the action, as set forth in the declaration, is not sustainable.

3. The declaration is uncertain, and insufficient in stating the amount due; and does not state a proper demand on the defendant to pay the same.

*H. Bleecker*, for the defendant. 1. In *England*, where a legacy is charged on land, or to arise from the sale of real estate, it cannot be sued for in the spiritual courts, but is recoverable only in courts of equity.* This case does not come within our statute† giving a suit against executors. In *Atkins* v. *Hill*, and *Hawkes* v. *Saunders*,‡

* 2 *Woods*, 478.
*Hob.* 265.
† Sess. 24 c
174. s. 18.
‡ *Cowp.* 284. 289.

it was held, that *assumpsit* lies against an executor, upon an express promise to pay a legacy, in consideration of *assets*. But there is no case of an action of *assumpsit* brought against a devisee. In *Deeks* v. *Strutt*,[*] the court of K. B. decided, that no action at law could be maintained for a legacy; and Lord *Kenyon*, in giving his opinion, makes no distinction between an express and implied promise. He observed, " that the supporting such an action would be attended with the most pernicious consequences; that no action (except one in the time of the commonwealth) had been maintained for a legacy in a court of law."—" If an action would lie for a legacy, no terms could be imposed on the party who was entitled to recover; and, therefore, when the legacy is given to the wife, the husband would recover at law, and no provision be made for the wife and family; whereas, a court of equity would take care to make provision for the wife in such cases. The whole of that admirable system, which has been founded in a court of equity, would fall to the ground, if a court of law could enforce the payment of a legacy." And in *Farish* v. *Wilson*,[†] his lordship ruled at *nisi prius*, that no action at law would lie for a legacy; and he put it on the same grounds of convenience and policy; and that a court of equity alone could make such provisions as would suit the convenience and circumstances of the parties. In *Nicholson* v. *Sherman*,[‡] which was in the time of *Charles* II. it was held, that an action at law would not lie for a legacy. It is true, that in the case of Lord *Saye and Seale* v. *Guy*,[§] Lord *Ellenborough*, distinguishing the case from that of *Deeks* v. *Strutt*, held, that an action at law would lie against an executor to recover a specific legacy, after the assent of the executor to the bequest; and *Lawrence*, J. puts it on the ground, that, by the *assent* of the executor, the property in the chattel bequeathed vests in the legatee, and is governed by the rules of common law. But in the present case, there is no express promise

NEW-YORK, Nov. 1810.

BEECKER v. BEECKER.

[*] 5 *Term Rep.* 690. 2 *Roper on Legacies*, 592.

[†] *Peake's N. P. Cas.* 73.

[‡] *T. Raym.* 23.

[§] 3 *East's Rep.* 120. See *Freeman's Rep.* 289.

BEECKER
v.
BEECKER.

* 3 Bos. & Pull.
166.

of the defendant to pay the legacy. The declaration states, that he absolutely refused to pay it.

Again, suppose that after the devisee had paid the legacy, the fund should be exhausted, he could not bring an action at law against the legatee to refund.* The provision of the statute, (sess. 24. c. 174. sect. 18.) requiring the legatee to give security to refund, in case there are not assets enough to pay all the legacies, shows the sense of the legislature, as to the necessity of those provisions which a court of equity can make.

*Crary*, contra. The declaration states an express promise ; at least, it will be so considered, after verdict. The case of *Deeks* v. *Strutt*, is not applicable. That action was on an implied promise. Besides, it was since our revolution, and so no authority here ; and it was subsequent to the cases of *Atkins* v. *Hill*, and *Hawkes* v. *Saunders*, in which Lord *Mansfield* held, that an action at law would lie, on an express promise to pay a legacy, in consideration of *assets*.

† 2 *Salk.* 415.
2 Ld. *Raym.*
937. S. P.

In *Ewer* v. *Jones*,† Lord *Holt* held clearly, that a devisee might maintain an action, at common law, against a tertenant, for a legacy devised out of land ; for where a statute gives a right, the party, by consequence, shall have an action at law to recover it. And there is good reason for this, for if the party elects to take the land devised, he must take it *cum onere*, and ought to be liable for the legacy charged upon it. In *Hawkes* v. *Saunders*, *Buller*, J. says, there could be little doubt that the action could be maintained where the legacy was to be paid out of land, and there was an express assent of the executors.

‡ 1 *Hen. Bl.* 111.

In *Rose* v. *Bowler*,‡ *Wilson*, J. alluding to the cases in *Cowper*, where the executors made themselves liable, by their promise to pay in consideration of *assets*, observed, that the question then before the court, whether, by the general common law, an executor, *as such*, was liable to be

sued for a legacy, was a question of great importance, and still undecided; but that case was determined on a different point. In *Doe, ex dem. Lord Saye and Scale*, v. *Guy*, the court of K. B. were clearly of opinion, that an action at law would lie, for a specific legacy, after the assent of the executor.[*]

NEW-YORK,
Nov. 1810.

BEECKER
v.
BEECKER.

[*] 3 *East*, 120. See 1 *Saund.* 278. note. 1 *Ch. Cas.* 256. 2 *Lev.* 209.

KENT, Ch. J. delivered the opinion of the court. The promise stated in the declaration, is to be considered, after verdict, and upon the present motion, as an express promise. This is the presumption, and so it has been received by the courts, in a variety of cases, where there was no admission of the parties to contradict it. (*Cowp.* 283. 289. 7 *Term Rep.* 350. note. 4 *Johns. Rep.* 237.) The question, then, before us is, whether an action at law can be sustained against a devisee, upon his express promise to pay a specified sum, bequeathed as a legacy, and charged upon the land devised, and made after the executors had assented to the legacy, and in consideration of his having become seised of the land under the devise.

In the cases of *Atkins* v. *Hill*, and of *Hawkes* v. *Saunders*, (*Cowp.* 283. 289.) the court of K. B. determined that an action of *assumpsit* lay at law against an executor, on his express promise to pay a legacy, in consideration of assets received, sufficient to pay all the debts and legacies. Those decisions have been considered as shaken by the case of *Deeks* v. *Strutt.* (5 *Term Rep.* 690.) But the question in that case was, whether the law would raise an *implied* promise, on proof of the acknowledgment of assets, and when the legacy was payable out of the general funds of the testator; and the court held, that it would not. Lord *Kenyon* said, that it was a case almost without precedent, and that the means which a court of equity had to control the suit so as to meet the purposes of justice, particularly when the husband sued

for his wife's legacy, was a strong reason for confining the cognisance of such suits to the courts of equity. The K. B. afterwards, in *Doe* v. *Guy*, (3 *East*, 120.) laid much stress upon the circumstance, that the action of *Deeks* v. *Strutt* was upon the implied promise only. The cases in *Cowper* have not, therefore, strictly been overruled. They may be reconciled with the subsequent decisions, upon the distinction between an express undertaking, and a promise implied by law. It must, however, be admitted, that the language of some of the old cases, (*Dyer*, 264. *pl.* 41. *Moore*, 917. *Hob.* 265. *T. Raym.* 28.) as well as the general reasoning of Lord *Kenyon*, is against the action; but whoever has duly considered the authority of the two decisions in *Cowper*, and the powerful manner in which they are supported, cannot but be conscious of the weight with which they press upon the argument.

None of the old cases appear to have arisen upon an express promise. The court was content to lay down the general rule that the legatee must sue in the spiritual courts for his legacy. The objection upon which Lord *Kenyon* seems chiefly to have relied, does not apply here ; for this is not the case of a husband, suing for his wife's legacy, and the objection has, perhaps, been deemed of too much importance. It would equally apply to a voluntary payment of the wife's legacy, without the assent of chancery ; and it would equally prevent an action at law for a *specific* legacy, which action was sustained in the case of *Doe* v. *Guy*. A specific legacy may consist of money, or stock, or the profits of a farm, if it be designated with sufficient certainty. (2 *Fonb.* 375.)

This case is different from the ordinary case of a suit against the executor, for a legacy, payable out of the general fund, and which may be maintained at law, under our statute. (Sess. 24. c. 174. s. 18.) The books have been more favourable to the suit against the devisee. Lord *Holt* (2 *Salk.* 415. 2 *Ld. Raym.* 937.) supposed that an

action at law could be maintained in this case; and in *Paschell* v. *Keterich*, (2 *Dyer*, 151. b. *Benloe*, 60.) all the justices held, that the spiritual courts had no jurisdiction where the money was to arise from the freehold; and that the legatee might have account at common law. Lord *Coke* held the same language; (2 *Bulst.* 257. *Dyer*, 151. b. note ;) and in a case in the time of *Charles* II. (1 *Sid.* 45. *T. Raym.* 23.) *Twisden*, J. said, that in his time, it had been adjudged in the K. B. that if one by will devised a legacy, to be paid out of land, an action lay for this in that court.

These cases prove, at least, that there never was any settled course of decisions against the action; and when the devisee, or tertenant, affirms the trust, by accepting of the land, and promising to pay, the case comes within the principle of the cases decided by Lord *Mansfield;* for it is a contract founded upon a valuable consideration.

Whether a suit at law would lie against the devisee, or tertenant, without such promise, is a distinct question. It is easy to perceive difficulties in the way of such a suit, for the charge is not personal, but upon the land ; and unless the devisee makes himself personally responsible, by his express undertaking, the judgment and execution ought to be special, as in the case of a suit against the heir and devisee, under the statute. Until the statute of 3 and 4 *W. & M.* there was no remedy at law, by the creditor, against the devisee. Why should the mere possession by the tertenant of the land charged, support a personal action at law, of debt, or *assumpsit*, any more than the possession of land charged with any other trust, or encumbrance? In the case of *Livingston* v. *The Executors of Livingston*, (3 *Johns. Rep.* 189.) this court held, that an action at law would not lie against the *personal representatives* of the devisee, upon the mere *implied assumpsit*, arising from the devise itself. The declaration, in that case,

NEW-YORK,
Nov. 1810.

might have warranted the presumption of an express promise by the devisee; but it was conceded upon the argument, that it was the case of an implied *assumpsit*, and the court went upon that ground. But whether a suit at law will lie against the devisee, or tertenant, while in possession of the land, and without any promise to pay, the court give no opinion. We confine ourselves to the case now before us, and for the reasons given, the motion in arrest of judgment is denied.

SPENCER, J. not having heard the argument in the cause, gave no opinion.

Motion denied.