JUDAH GRIDLEY, committee, &c. of Maria Gridley, a lunatic, vs. GEORGE N. GRIDLEY.

Where lands are devised, charged with the payment of a legacy, assumpsit will not lie at the suit of the legatee, against the devisee, unless the latter has not only accepted the devise, but has expressly promised to pay the charge.

Where the personal estate is made a fund for the payment both of debts and legacies, the personal estate must first be exhausted, before a legatee can resort to land charged with the payment of his legacy.

Hence a promise, by a devisee of land charged with the payment of a legacy, to pay the legacy, will not be of any avail to the legatee, in an action in the nature of assumpsit, against the devisee, in the absence of any proof as to the insufficiency of the personal estate.

The mere acceptance of a devise and bequest, by the devisee, and his taking possession of the estate, without any express promise to pay an annuity charged on the land, or any circumstances from which such a promise can be presumed, will not render the devisee liable for the annuity, in an action of assumpsit.

Such a cause of action does not rest in contract, or promise, but is of equitable cognizance, exclusively ; and if it be joined with other claims, arising out of contract, and suable at law, and not arising from the same transaction with the first, there is a misjoinder of actions.

APPEAL from an order made at a special term, allowing a demurrer to the complaint. The following opinion, delivered by the judge, at special term, on allowing the demurrer, states the substance of the pleadings.

KNOX, J. "The complaint states four causes of action. First. That the father of the defendant, at his decease, was indebted to Maria Gridley, a lunatic, for whom and whose estate the plaintiff, Judah Gridley, was duly appointed the committee. That by the will of his father, personal and real estate is given to the said defendant, and ' the said George is to pay all the debts that I,' (the testator,) ' may owe at my decease, &c.—and also $35 annually, to his sister Maria, (the lunatic,) during her life,' &c. It further alleges that the said George accepted said devises and bequest and took possession of all the personal and real estate, &c. Whereby,

Gridley *v.* Gridley.

&c. · Second cause of action, that the defendant is indebted to Maria Gridley, &c. Third. That the said Maria was the owner, &c. of certain property, which the defendant converted and became liable to pay for, and which he promised to pay for ; and that the same is now due and owing, &c. Fourth cause of action. That the defendant is indebted to Sarah Gridley for rent, &c. which was assigned to Maria Gridley, &c.

The defendant demurs, and assigns for causes : 1st. That it appears by the face of the complaint that the plaintiff has no legal capacity to sue. 2d. That there is a defect of parties plaintiff. 3d. That it appears upon the face of the complaint, that several causes of action have been improperly united.

As no question is made upon the two first causes of demurrer, I shall assume that as to them the· demurrer is groundless. (*Laws of* 1845, *p.* 91. 3 *R. S. 4th ed.* § 11. 8 *Barb.* 552. 14 *id.* 488.) The second, third and fourth causes of action are of a nature which heretofore have been denominated legal actions, properly cognizable as such in courts of law, as distinct from courts of equity. What is the nature of the first cause of action ? Did it belong to the class just mentioned, and could the liability of the defendant, to pay the debts of the testator, arising from his acceptance·of the real and personal estate, be enforced as a strict legal right by the plaintiff, or must it have been enforced in a court of equity ? If it belong to the first class, then the demurrer is groundless : if to the second class, then the demurrer is well taken ; because, although the plaintiff may unite in the same complaint several causes of action, whether they be such as have heretofore been denominated legal or equitable, or both, they must arise out of the same transaction, or transactions connected with the same subject of action. This cannot be said of the causes of action stated in this complaint.

· On looking into ·the books I can find no case where a lia-

bility of the nature of the first cause of action has been attempted to be enforced in a court of law ; nor can I find any precedents for a declaration in such a case ; on the contrary, it is an easy matter to find cases where a court of equity has enforced such liability.  But as a question not controlled by precedent but principle, I do not see how this action can be regarded as a legal action.  If we look at it as such, we must see that there was an express promise of the defendant, to pay this debt which his father owed, or one must be implied.  There is no pretense of an express promise ; and there is no difference between an express and an implied promise, except in the nature of the proof by which they are made out.

In this case there is no privity between the defendant and the plaintiff, and hence there can be no promise implied, to pay this debt.  It is attempted to liken this to a case in 20 *N. Y. R. p.* 268.  But there was an express promise on the part of Fox, the defendant, to whom Holly loaned $500, that he, Fox, would pay it to Lawrence, whom Holly was owing that sum.  And it is to be remarked that the court were divided, two members holding that the action could not be maintained—in other words, that the defendant was not liable to the plaintiff.  *Spalding* v. *Hallenbeck* (30 *Barb.* 299) is also cited.  That merely holds that the grantee of a deed containing a clause by which he ' agreed' to support the grantors, &c. by accepting the deed was liable to maintain the grantors.  The question in the case in hand is, not whether the defendant is liable, but whether the action to enforce that liability is of a legal or equitable nature.  Hence the other cases cited do not decide the question—(*i. e.* 1 *Comst.* 490 ; 4 *id.* 57 ; 18 *Wend.* 205.)

In a word, the liability of the defendant to pay the debts of the testator, does not arise from any notion of a promise to pay them, but arises equitably by reason of his acceptance of the bequests.

It is also said, that, inasmuch as the summons and com-

plaint only demand judgment for so much money, the actions may be joined. But this is not the test. The only test is that prescribed by section 167 of the code of procedure. As these causes of action do not arise out of the same transaction, or transactions connected with the same subject of action, or upon contract express or implied, nor are embraced in any subdivision of section 167, of actions which may be joined, I must hold that the demurrer is well taken."

From the order entered upon this decision the plaintiff appealed to the general term.

*T. R. Strong*, for the appellant.

*J. D. Husbands*, for the defendant.

*By the Court*, JOHNSON, J.   The first cause of action alleged in the complaint does not arise out of the same transaction with the other three, or either of them ; nor from transactions connected with the same subject of action. There is, therefore, a misjoinder of actions, unless such first cause of action, is founded upon a promise, on the part of the defendant, either express or implied, to pay the several amounts claimed in the first count. All the cases in this state go to the extent of holding that the action of assumpsit will not lie at the suit of a legatee, against the devisee, under such circumstances, unless the latter has not only accepted the devise, but has expressly promised to pay the charge. (*Elwood* v. *Deifendorf*, 5 *Barb.* 399. *Tole* v. *Hardy*, 6 *Cowen*, 340. *Kelsey* v. *Deyo*, 3 *id.* 144. *Van Orden* v. *Van Orden*, 10 *John.* 30. *Beecker* v. *Beecker*, 7 *id.* 99.) And it has been held, that even when the devisee has entered upon the land and expressly promised to pay, no action could be maintained at law, upon such promise, unless the land devised was exclusively charged. If, by the will, it appeared that the personal estate of the testator was to come in aid

of the real estate, and constituted a part of the fund, for the payment of the charge, equity had exclusive jurisdiction of the case, and no action could be maintained upon the promise, in a court of law. This is conclusively settled by the cases above cited. And the rule was the same, whether the charge was upon the land, or upon the devisee personally, in respect to the land devised.

That the testator intended his personal estate should con-stitute a fund for the payment of all his debts and the legacies given in the will, cannot admit of a doubt, when we look at the provisions of the will. He gives all his personal property to the defendant, and directs that his estate shall be settled, and all the debts and legacies paid, as directed in the will, by the defendant, if it can be legally done by him, personally, and if not, then he appoints the defendant and George Brown his administrators for that purpose. It is apparent, therefore, that the personal estate was made a fund for the payment both of debts and legacies. Of course, under such circumstances, the personal estate must first be exhausted, before the legatee could resort to the land. It would seem, therefore, that a promise by the defendant, to make the payments, if one had been alleged, or could be proved upon a trial, would not be of any avail to the plaintiff, in an action in the nature of assumpsit, and of a legal character like the action in question.

But the real and fatal difficulty is, that no express promise is alleged in the complaint, and no facts are stated from which any such promise can be presumed. The complaint alleges that the defendant accepted the several devises and bequests, and took possession of the personal estate of the testator, whereby he became liable to pay the debts due from the testator to the said Maria, and also the annuity. In the case of *Van Orden* v. *Van Orden*, before cited, it was held that the acceptance and enjoyment of the estate by the devisees, and actual payment of part of the annuity by them, was evi-

dence of, and equivalent to, an express promise by them to pay such annuity, upon which assumpsit would lie.

It is strenuously argued by the plaintiff's counsel that the mere acceptance and enjoyment of the several devises and bequests under the will are sufficient evidence of a promise to pay; and that the law from such acts will infer a promise; and he cites the case of *Olmsted* v. *Brush*, (27 *Conn. Rep.* 530,) which seems to be directly in point to sustain this position. But the contrary of this has been held by the supreme court in this state, in a case where the point was expressly raised and decided. (*Livingston* v. *Executors of Livingston*, 3 *John.* 189.) Chancellor Kent, who delivered the opinion of the court in that case, said "there is no ground whatever to raise an implied assumpsit from the devise itself." The point made by *E. Williams*, the plaintiff's counsel in that case, was the same that is insisted on by the plaintiff's counsel here; that "by taking the property out of which the money was to be paid to the plaintiff, there is a consideration, and an implied promise, to pay the money as directed by the will." The same learned judge, in the subsequent case of *Beecker* v. *Beecker*, (*supra*,) referring to this doctrine and to the decision in *Livingston* v. *Executors of Livingston*, says: "Why should the mere possession of the tertenant of the land charged, support a personal action at law of debt or assumpsit, any more than the possession of land charged with any other trust or incumbrance?" To the same effect, precisely, is the case of *Pelletreau* v. *Rathbone*, (18 *John.* 429.) In that case the real and personal estate were expressly charged with the payment of the annuities. The action was debt for the legacies, against the tertenants of the land, and the court, after the plaintiff's counsel had opened his case and stated his points, refused to hear any argument, saying, "that the question was clearly settled," and that the plaintiffs could not recover in such an action. The doctrine seems to be too firmly established to be now unsettled.

As the first cause of action does not rest in contract, or

promise, but is of equitable cognizance exclusively, there is a clear misjoinder, and the judgment at special term must be affirmed.

[MONROE GENERAL TERM, December 3, 1860. *Smith, Johnson* and *Knox,* Justices.]